PORTER | SCOTT
A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendant BRAD ALFORD

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

KRISTOPHER STOWE, an individual,

Plaintiff,

v.

BRAD ALFORD, in his personal capacity,

Defendant.

______________________________/

Case No. 2:19-cv-01652-KJM-AC

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Complaint Filed: 08/23/2019

Date: February 11, 2022
Time: 10:00 a.m.
Ctrm.: 3
Judge: Kimberly J. Mueller

Defendant Brad Alford ("Defendant") hereby submits his Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

## I. INTRODUCTION

Defendant submits Plaintiff seriously mischaracterizes what can be seen or heard on the submitted videos, and thus his attempt to create triable issues should be rejected. In addition, Plaintiff omitted any argument in opposition to qualified immunity. Accordingly, Defendant submits the motion should be granted and this case dismissed.

## II. LAW AND ARGUMENT

### A. PLAINTIFF FAILS TO CREATE A GENUINE DISPUTE OF MATERIAL FACT AS TO HIS FOURTH AMENDMENT CLAIM BASED ON EXCESSIVE FORCE.

Defendant moved for summary judgment on Plaintiff's Fourth Amendment claim for excessive

force on the grounds that the force used was objectively reasonable under the circumstances.

**1. Defendant Alford's Use of Force in the Field was Reasonable.**

Regarding his use of force in detaining Plaintiff and securing him for transport, Defendant Alford argued that his attempt to effectuate a controlled takedown of Plaintiff to better secure him in handcuffs, his removal of Plaintiff from the patrol car by his ankle, and any incidental contact with Plaintiff's person during the handcuffing process was objectively reasonable given Plaintiff's intoxication, his lack of cooperation, his intent to leave the scene, and Defendant's concerns for the safety of himself and that of others on the scene. Defendant argued that he did not strike Plaintiff nor push Plaintiff's head down towards the pavement.

In Opposition, Plaintiff argues that, in considering the factors set forth in *Graham v. Connor*, Defendant Alford's use of force was unreasonable and excessive because: (1) the force used was "severe"; (2) the crime of public intoxication is a "minor offense" such that it weighs against the use of force; (3) Plaintiff was not a threat to Defendant Alford or others; (4) Plaintiff did not resist arrest or attempt to leave the scene; and (5) Defendant Alford could have used other methods to accomplish his objectives. (Opp., pgs. 9-11).

First, Plaintiff argues that Defendant Alford's conduct in "throw[ing] Plaintiff to the ground, smash[ing] his face into the pavement, pull[ing] him out of the vehicle handcuffed which resulted in Stowe crashing his head and back unto [sic] the ground", putting pressure on Plaintiff's back "to make it difficult to breathe," and placing him in the WRAP device, was "severe physical force."[1] (Opp., p. 9).

Preliminary, Plaintiff appears to argue that Defendant Alford placed pressure on Plaintiff's back making it difficult to breathe (after he was removed from the patrol vehicle), and that such pressure was an unreasonable use of force.[2] In addition, Plaintiff appears to allege that Defendant Alford's use of the WRAP restraint device was an unreasonable use of force under the Fourth Amendment. Plaintiff raises these facts and new theories of Fourth Amendment liability for the first time in his Opposition. He did not allege such uses of force in his Complaint, nor did he even suggest in his deposition testimony that he was alleging the impropriety of such uses of force. These new facts/theories of liability raised for the first time in his Opposition should not be considered by this Court. *See AJ Reyes v. Educational Credit Management Corp.*, 2016 WL 2944294, *4 (S.D. Cal. May 19, 2016) ("[T]he Court declines to consider Plaintiff's factual allegations raised for the first time in opposition to Defendants' motion for summary

---

[1] Plaintiff appears to abandon any claim that Defendant Alford struck him. See UMF 50.

[2] To the extent Plaintiff relies on Exhibit F to the IOE (Barrington's BWC (2)) to support this claim, such evidence does not support the fact as presented.

judgment."); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006).

To the remaining allegations of force, Plaintiff's recitation of the alleged force used is at odds with his deposition testimony and the body-worn camera video footage. First, while Plaintiff alleges that he was "thrown" to the ground by Alford, he unequivocally admitted at his deposition, "I don't know if I was like thrown to the ground or what." Ex. B to the IOE 91:12-17. Moreover, the only evidence in the record Plaintiff cites to support that he was "thrown" to the ground is Defendant Alford's body-worn camera footage, which fails to depict that Alford "threw" Plaintiff to the ground. See Plaintiff's Separate Statement of Disputed Material Facts ("DMF") 30. Lastly, Plaintiff "admits" Defendant's UMF 21 that "[b]efore Alford could complete the controlled take down, both he and Stowe fell to the ground." UMF 21 is supported by Defendant Alford's police report (Ex. C to the IOE) and Defendant Alford's Declaration (Ex. A to the IOE). Plaintiff has cited no evidence in the record before this Court to put into dispute Defendant Alford's version of events as cited in UMFs 20 & 21. To the extent Plaintiff suggests that Defendant Alford's attempt to use a takedown maneuver to better gain better control of Stowe while placing him in handcuffs was "severe", such use of force was hardly severe in light of Plaintiff's resistant behavior.

Next, Plaintiff's allegation that it was Defendant Alford who allegedly smashed his face into the pavement is undermined by his deposition testimony and is otherwise not supported by the evidence in the record. Initially, Plaintiff suggested in his deposition testimony that it was Defendant Alford who "smashed" his head onto the pavement. Ex. B to the IOE 91:21-25. Later in his deposition, Plaintiff changed his testimony to suggest that someone, among the officers and medics securing him, was holding his head down on the pavement. Ex. B to the IOE 107:11-19, 109:4-11. Other than Plaintiff's early deposition testimony that he later changed, there is no evidence in the record to support that Defendant Alford "smashed" Plaintiff's head into the ground. Otherwise, Plaintiff fails to establish he was in any position to see or understand the identity of any person who made contact with the back of his head.

Thirdly, while Plaintiff does not explicitly argue that "shoving" or "throwing" Plaintiff into the police vehicle was a "severe use of force", he refers to this alleged use of force throughout his Opposition. There is no evidence in the record to support that Defendant Alford shoved or threw Plaintiff into the back of the patrol car. In fact, during his deposition, Plaintiff disclaimed any memory of entering or exiting the patrol car prior to the time he was placed in the WRAP device. See Ex. B to the IOE 111:18-24. Plaintiff does not put into dispute that as Defendant Alford was placing Plaintiff in the back seat of his patrol car, Plaintiff began struggling with Alford and landed in the foot well of the

back seat area. See UMFs 38 & 40. Relatedly, Defendant Alford's use of force in pulling Plaintiff out of the back seat of the car by his ankle was not severe considering Plaintiff's combative behavior in kicking Defendant Alford in the chest.

Next, Plaintiff argues that his minor offense of public intoxication "weighs against a finding that the government had an interest in the use of significant force." (Opp. 10). Plaintiff further claims that at the time Defendant Alford attempted to place Plaintiff in handcuffs, Defendant Alford only intended to detain Plaintiff for a medical evaluation and not to arrest him for any crime.[3] Plaintiff's argument ignores that the alleged use of force came after Plaintiff attempted to pull away from Defendant Alford and resist during the handcuffing process. At the time Defendant Alford used force to secure Plaintiff in handcuffs, Plaintiff had already committed the criminal offenses of public intoxication under Pen. Code 647(F) and obstructing/resisting an executive officer under Pen. Code 69. The government's interest in securing a highly intoxicated suspect who was actively resisting arrest weighs in favor of using minimal force to secure and subdue the suspect.

While Plaintiff does not directly address the use of force exercised in removing Plaintiff from the police vehicle, at the time Defendant Alford used force, Plaintiff had already kicked Defendant Alford in violation of Pen. Code 243(B).

Plaintiff next argues that he did not pose a threat to Defendant Alford or others, resist arrest, or attempt to leave the scene, making any use of force unreasonable. In support, Plaintiff states that he "was in a jovial mood" and "was so much not a threat that Alford walked away from [him] and left him unattended, Alford allowed paramedics to be just a few feet from [him] unattended", and that Alford "allowed members of [the] public to enter the area to illicit [sic] any relevant information they may have had." (Opp., p. 10). Plaintiff further argues that he did not "fight" with Defendant Alford[4], did not attempt to leave the scene, and complied with Defendant Alford's directives. (Opp., pgs. 10-11). Plaintiff's argument again ignores that Defendant Alford began using force after Plaintiff attempted to pull away and resist during the handcuffing process. Defendant Alford perceived that Plaintiff was highly intoxicated, unfit to care for himself, and was uncooperative during the investigation. In addition, Plaintiff explicitly stated his intention to leave the scene. As Defendant Alford began to handcuff

[3] In his Opposition, Plaintiff states: "[i]t must also be noted that Alford stated that Plaintiff would either be leaving in the police car or with the 'red truck' (referring to paramedics) just a few moments before the physical incident." Plaintiff wrongly attributes such statements to Defendant Alford. Ex. E to the IOE establishes that such comments were made by Officer Barrington.

[4] To the extent Plaintiff asserts this as a disputed "fact", such fact as presented is not supported by the evidence in the record. In fact, the evidence in the records supports Defendant Alford's version of events, that Plaintiff began to pull away and resist the handcuffs.

Plaintiff, Plaintiff began pulling away and resisting. Defendant Alford reasonably believed, in light of Plaintiff's state of intoxication, resistant behavior, and statements, that Plaintiff posed a danger to Defendant Alford and others on the scene and/or intended to flee the scene.

While Plaintiff does not directly address the use of force exercised in removing Plaintiff from the police vehicle, at the time that force was exercised, Plaintiff posed a threat to officer safety. Plaintiff had already demonstrated his unwillingness to cooperate in entering the patrol vehicle and had kicked Defendant Alford in the chest.

Lastly, Plaintiff argues that Defendant Alford could have used other methods to accomplish his objectives. (Opp., p. 11). Officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable." *Glenn v. Washington County*, 673 F.3d 864, 876 (9th Cir. 2011). According to Plaintiff, Defendant Alford "could have allowed Plaintiff to speak with the paramedics without placing him in handcuffs." In making this argument, Plaintiff clearly ignores the undisputed material facts that he was not cooperative with the medics or police and that he verbally expressed his intent to leave the scene. Plaintiff next argues that instead of throwing him to the ground or smashing his face into the asphalt, Defendant Alford could have "simply just explained" to Plaintiff why he was being detained, and once on the ground, could have focused solely on controlling Plaintiff's arms to place him in handcuffs. As is evidenced by the body-worn video footage, Defendant Alford attempted to use the least intrusive means to detain Plaintiff, i.e. by handcuffing him. When that failed and Plaintiff began to pull away and resist, which is depicted in the video footage, Defendant Alford attempted a controlled takedown of Plaintiff to secure him in handcuffs. Plaintiff continued to struggle with Defendant Alford once on the ground, which prompted Officer Barrington to intervene and strike Stowe in the head in an effort to subdue him (UMF No. 27). Additionally, it is undisputed that during the struggle, the medics intervened to assist in handcuffing Plaintiff (UMF No. 30). Defendant Alford did not hit, kick, strike, or punch Plaintiff. Defendant Alford used only the force required to detain a resistant suspect.

Plaintiff further argues that to accomplish his objective of transporting him, Defendant Alford could have "allowed Plaintiff to step into the vehicle and sit down on the seat" and "could have coordinated with the other two officers of [sic] the scene to come up with a plan to better position Plaintiff in the back seat of the patrol car." (Opp., p. 11). Plaintiff's argument ignores that when Defendant Alford attempted to place Plaintiff into the back seat, Plaintiff began struggling against him and landed in the footwell of the backseat. Plaintiff further ignores that when Defendant Alford attempted to reposition Plaintiff on the back seat, Plaintiff kicked Defendant Alford. Plaintiff cocked his

foot back as if to kick a second time. Defendant Alford had no other choice (without getting harmed) but to pull Plaintiff from the vehicle by his ankle and detain him until the WRAP device arrived. Defendant Alford used only the force required to transport an uncooperative and violent suspect.

In further support of his argument that Defendant Alford used excessive force, Plaintiff cites to *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007), claiming that such case is instructive here. *Blankenhorn* is inapposite. There, in reversing a grant of summary judgment in favor of the defendant officers, the Ninth Circuit held that a rational jury could conclude that the defendants' use of force in detaining a suspect for trespassing, gang-tackling him, punching him several times, pushing his face down into the ground by shoving a knee on the back of his neck, and placing him in hobble restraints was excessive considering that he posed no threat to officer safety, made no attempt to flee, and only mildly resisted the handcuffing process, which the Court concluded may have been permitted given the circumstances. That case is distinguishable.

In this case, Defendant Alford was confronted with an entirely different set of circumstances. He faced a highly intoxicated suspect who: failed to cooperate with Defendant Alford's investigation or with the medics, expressed his intent to leave the scene, resisted arrest, and committed a battery upon a police officer. Furthermore, unliked the defendants in *Blankenhorn*, Defendant Alford only exercised the minimal force required to subdue Plaintiff and prepare him for transport.

Defendant Alford's use of force was objectively reasonable under the totality of the circumstances, and he is entitled to summary judgment on this claim.

## B. PLAINTIFF FAILS TO CREATE A GENUINE DISPUTE OF MATERIAL FACT AS TO HIS FOURTEENTH AMENDMENT CLAIM BASED ON EXCESSIVE FORCE.

Next, Defendant moved for summary judgment on Plaintiff's Fourteenth Amendment claim and argued that Defendant's use of force in the Placer County Jail[5] was not objectively unreasonable under the standard set forth in *Kingsley v. Hendrickson* and *White v. Roper* considering that Plaintiff posed a significant threat of physical harm to Alford (as described above) and that there was an immediate need to restore discipline in the facility.

In Opposition, Plaintiff argues that Defendant Alford's use of force was excessive when he grabbed Plaintiff by the throat, choked him, slammed him against the counter, and bent him backwards. (Opp., p. 15). Plaintiff argues that such use of force was excessive given that Plaintiff was handcuffed,

[5] Plaintiff's arguments applying the Fourth Amendment to this interaction are irrelevant as not only does Plaintiff assert this claim under the Fourteenth Amendment, but also is not the proper analysis.

he committed no crime, and did not pose a threat of harm.

To support his argument, Plaintiff cites to case law where courts have found the use of force against handcuffed arrestees excessive. The legal authority Plaintiff cites is inapposite to the case *sub judice*. For instance, in *Phelps v. Coy*, 286 F.2d 295 (6th Cir. 2002), in affirming a denial of summary judgment for the defendant officer, the Sixth Circuit reasoned that in the Fourth Amendment context, an officer's use of force in hitting a handcuffed arrestee twice in the face and banging his head three times on the ground after the officer had neutralized any threat was unreasonable. The Sixth Circuit arrived at a similar conclusion in *Morrison v. Board of Trustees of Green Tp.*, 583 F.3d 394 (6th Cir. 2009), where an officer continued to push a handcuffed arrestee's face into the ground despite that the arrestee posed no threat to officer safety and was subdued. The Ninth Circuit cases Plaintiff cites render the same conclusion: the use of force after an arrestee has been subdued may constitute excessive force. *See LaLonde v. County of Riverside*, 204 F.3d 947, 960-961 (holding an officer's failure to wash out arrestee's eyes after being pepper sprayed when arrestee was subdued and handcuffed amounted to excessive force); *Mendoza v. Block*, 27 F.3d 1357, 1362 (suggesting that in general, siccing a police dog on a handcuffed arrestee who posed no threat constituted excessive force).

Here, unlike the case law discussed above, the threat posed by Plaintiff had not been neutralized at the time Defendant Alford used force. The video footage establishes that Defendant Alford approached Plaintiff to inform him of their trip back to hospital. Plaintiff immediately began cursing at Defendant and made a threatening statement. Immediately following the threat, Plaintiff abruptly and aggressively stood up in Defendant Alford's face. While Plaintiff remained handcuffed during the incident, he still posed a significant threat to Defendant Alford's safety. For instance, Plaintiff very easily could have head butted Defendant Alford had Alford not reacted quickly enough to stabilize and secure Plaintiff with both hands. Once the threat was neutralized and Plaintiff was stabilized (within four seconds), Defendant Alford ceased physical contact with Plaintiff.

Defendant Alford's use of force was not objectively unreasonable under the Fourteenth Amendment in light of Plaintiff's threatening behavior, Defendant Alford's good-faith belief that Plaintiff posed a threat of harm, and the need to maintain order in the facility. Defendant Alford is entitled to summary judgment on this claim.

///

///

///

### C. PLAINTIFF FAILS TO CREATE A GENUINE DISPUTE OF MATERIAL FACT AS TO WHETHER DEFENDANT ALFORD IS ENTITLED TO QUALIFIED IMMUNITY.

Defendant next separately moved for summary judgment on Plaintiff's Fourth/Fourteenth Amendment excessive force claims on the grounds that Defendant Alford is entitled to qualified immunity. In opposition, Plaintiff wholly fails to address the arguments that Defendant Alford is entitled to qualified immunity. In fact, there is not even an acknowledgment in the opposition that qualified immunity was raised in the motion, which Defendant can only infer was a strategic move in favor of arguing triable issues exist. Insofar as the undisputed facts allow the court to nonetheless determine qualified immunity and that Plaintiff has the burden of producing such authority, but has not, he concedes the argument. Moreover, the above arguments also establish the cases cited by Plaintiff in his force arguments are distinguishable on their facts, and thus Defendant Alford is entitled to qualified immunity on both the Fourth and Fourteenth Amendment claims.

## III. CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court grant his Motion for Summary Judgment.

Dated: December 29, 2021

Respectfully submitted,

PORTER SCOTT
A PROFESSIONAL CORPORATION

By /s/ John R. Whitefleet
John R. Whitefleet
Attorney for Defendant